UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MOHANRAM RAMALINGAM,
AARTI RAMAKRISHNAN,

                     Plaintiffs,

v.

JEH JOHNSON, Secretary of the
Department of Homeland
Security, et al.,

                     Defendants.

Civ. No. 13-7416 (KM)

MEMORANDUM OPINION

**KEVIN MCNULTY, U.S.D.J.:**

    The plaintiffs, Monhanram Ramalingam and Aarti Ramakrishnan, who are husband and wife, seek this Court's review of the decision of the United States Citizenship and Immigration Service ("USCIS") to revoke the I-140 Immigrant Petition for Alien Worker ("I-140 petition") filed by Ramlingam's former employer, Vision Systems Group, Inc. ("VSG"). Also challenged are the USCIS's later decisions to deny Plaintiffs' Form I-485 Applications for Adjustment of Status to Lawful Permanent Resident ("I-485 Applications"). Because the Court lacks jurisdiction, the motion to dismiss is granted as to Count I of the Complaint, but denied as to Count II.

I.     **Background**

    A.     **Employment-based "Green Cards" and Portability**

    The Immigration and Nationality Act (INA) provides that certain immigrant aliens may apply for green card status based on an employer's offer of a permanent job as a skilled worker. *See* 8 U.S.C. § 1153(b)(3)(A)(i). Classifications and decisions as to such employment-based immigration are the province of USCIS. *See* 8 U.S.C. § 1103(a)(1) (delegation to Homeland Security); 8 C.F.R. § 2.1 (sub-delegation to USCIS). A prerequisite to such status is that the prospective employer obtain from the U.S. Department of

1

Labor ("DOL") a certification stating that there are no qualified, able and willing U.S. workers available to fill the position, and that the wages and conditions of similarly employed U.S. workers will not be affected. *See* 8 U.S.C. § 1182(a)(5)(A)(i). The prospective employer's application to DOL for such a certification is known as a Form ETA-9089 (formerly Form ETA-750).

Based on such a DOL certification, the employer may file an I-140 petition with USCIS to have the prospective employee classified as an employment-based immigrant. *See* 8 C.F.R. § 204.5(c). Authorization to grant a I-140 petition is conferred by 8 U.S.C. § 1154. *See Herrera v. USCIS*, 571 F.3d 881, 887 (9th Cir. 2009).

The Secretary of Homeland Security, "for what he deems good and sufficient cause," may at any time revoke the approval of an I-140 petition. *See* 8 U.S.C. § 1155. USCIS may be required to give the employer notice and an opportunity to respond. *See* 8 C.F.R. § 205.2(b); *id.* § 205.2(a) (authority delegated to USCIS).

An alien worker, either concurrently with or following an I-140 petition, may apply for adjustment of status to that of lawful permanent resident. *See* 8 U.S.C. § 1255(a); 8 C.F.R. § 245.2(a)(2)(i)(B). The I-140 petition, however, must be approved first; an approved, valid petition is the precondition to adjustment of status. *See* 8 C.F.R. § 245.1(c). It follows that, if USCIS denies or revokes an I-140 petition, it must also deny any dependent, pending I-485 adjustment of status petition. *See George v. Napolitano*, 693 F. Supp. 2d 125, 130 (D.D.C. 2010); 8 U.S.C. § 1255(a); 8 C.F.R. § 254.2(a)(2)(i)(B). If, however, both the I-140 petition, and then the I-485 petition, are granted, the alien may become a lawful permanent ("green card") resident.

There is a waiting list for green cards, and the process can take a long time. Congress has therefore enacted a "portability provision" so that a worker who switches jobs while an application is pending does not need to restart the entire process. Under certain circumstances, an alien worker who is the beneficiary of Employer #1's approved I-140 petition may "port" to a similar

occupation with Employer #2 without losing his or her place in line. The eligibility requirements are that the alien worker (1) be the beneficiary of Employer #1's approved I-140 petition; (2) have had an I-485 application pending with USCIS for at least 180 days; and (3) be "porting" to work with Employer #2 in a job that is the same or similar to that for which Employer #1's I-140 petition was filed. *See Herrera v. USCIS*, 571 F.3d 881, 887 (9th Cir. 2009) (citing 8 U.S.C. § 1154(j)). If so, then USCIS continues to process the I-485 application just as if the worker had remained with Employer #1. If approval eventually results, the worker may obtain a green card.

Irrespective of "porting," however, a valid, approved I-140 application must underlie the I-485 application. "Portability" does not affect the discretionary authority of USCIS to revoke approval of an I-140 application for good and sufficient cause. *See Herrera*, 571 F.3d at 889. And a revoked I-140 implies that the I-485, too, must be rejected. *Id.* at

### B.  Plaintiffs' Applications

The following facts, taken from the Complaint and the documents attached (ECF nos. 1, 1-1), do not seem to be in dispute.

Plaintiffs are citizens of India. Mr. Ramalingam's[1] previous employer, Sybase, filed a non-immigrant petition that he be granted H-1B status. Ramalingam changed jobs from Sybase to VSG. VSG filed a labor certification with DOL, and DOL approved it in May 2006.

VSG then filed an I-140 immigrant petition with USCIS, seeking to classify Ramalingam as a professional or skilled worker holding an advanced degree, or of exceptional ability. *See* 8 U.S.C. § 1153(b)(2). (These are known as "EB-2" immigrants.) On June 25, 2007, USCIS approved VSG's I-140 petition. (ECF no. 1-1 at 2)

On July 2, 2007, Ramalingam, as beneficiary of VSG's I-140 approval, then filed an I-485 petition seeking to adjust his status to that of lawful

---

[1]  I focus on Mr. Ramalingam's history because his wife's status is derivative of his.

3

permanent resident. That application remained pending for some time, as no appropriate immigrant visa was immediately available. *See* 8 C.F.R. § 245.2(a)(2)(i)(A).

In 2008, while the I-485 application remained pending, Mr. Ramalingam switched jobs from VSG to Bank of America. In October 2010, VSG's president pled guilty to mail fraud, *see* 18 U.S.C. § 1341, in connection with a non-immigrant filed in connection, not with Ramalingam, but another employee. Other VSG officers were apparently convicted as well.

USCIS therefore sent VSG a Notice of Intent to Revoke ("NOIR") approval of VSG's petitions, including the I-140 for Ramalingam. VSG failed to respond to the NOIR. On July 30, 2012, USCIS did revoke the I-140 approval VSG had obtained on behalf of Ramalingam.[2]

Ramalingam's I-485 petition remained pending. On September 7, 2012, the other shoe dropped. USCIS denied Ramalingam's pending I-485 petition because the I-140 approval upon which it was based had been revoked. The derivative I-485 petition of Ramalingam's spouse, Ms. Ramakrishnan, was denied as well.

Plaintiffs filed this action to challenge USCIS's revocation of VSG's I-140 petition and the denial of their I-485 applications. Count 1 of the Complaint (ECF no. 1) asserts a challenge under the Administrative Procedures Act, 5 U.S.C. § 706, to the agency's revocation of approval of the I-140 application, and the resulting denial of the I-485 petition. Count II of the Complaint asserts a violation of due process.

## II. Legal Standard

The defendants have moved to dismiss the complaint for lack of jurisdiction. Rule 12(b)(1), Fed. R. Civ. P., governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*,

---

[2] Ramalingam complains that, having left VSG behind long ago, he was not notified of this process and knew nothing about it until it was over.

4

549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. As on a Rule 12(b)(6) motion, the court may consider documents attached to or relied on in the complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997).

### III.   Discussion

#### A.   Count I

Count I challenges the USCIS's decisions to revoke its approval of VSG's I-140 application and, as a result, deny the I-485 petition. Defendants raise a number of grounds for dismissal. Finding that I lack jurisdiction to entertain the claims in Count 1, I go no further.[3]

Count I seek to review agency action under the Administrative Procedure Act (APA), *see* 5 U.S.C. § 702. Such review is unavailable, however, to the extent that the relevant statutes "preclude judicial review." 5 U.S.C. § 701(a)(1); *see Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984). If Congress, in a more specific enactment, has precluded judicial review of particular actions of an agency, then an APA challenge is precluded. *See Wheaton Industries v. EPA*, 781 F.2d 354, 357 (3d Cir. 1986).

---

[3]   I assume *arguendo* that, if plaintiffs possessed a cause of action over which the court had jurisdiction, they would have standing to pursue it. *See Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 161–64 (3d Cir. 2015) (finding constitutional and zone of interest standing, and also finding regulatory standing where regulation for special religious workers, unlike that for employees, grants the alien standing to file a petition).

Congress has specifically precluded judicial review of discretionary decisions of USCIS like the one here:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
>> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>>
>> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

A "discretionary" decision is one made pursuant to a statute that vests discretion in the agency. The statute under which the Secretary of Homeland Security may revoke approval of a visa petition provides as follows:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title.

8 U.S.C. § 1155. VSG's I-140 petition was approved under the authority of Section 1154(b)(3). Section 1155 was the source of the discretionary authority of USCIS to revoke its approval of VSG's I-140 petition.

Section 1155 vests unreviewable discretion in USCIS. The U.S. Court of Appeals for the Third Circuit has explicitly rejected the contention that Section 1155's authorization of revocation "for what [the Secretary] deems good and sufficient cause" imposes a nondiscretionary, reviewable statutory standard. *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 203–05 (3d Cir. 2006). "Accordingly," the Court held, "we have no difficulty concluding that the decision to revoke an approved visa petition pursuant to 8 U.S.C. § 1155 is left to the discretion of the Secretary of Homeland Security." *Id.* at 205. And as such, it is "shielded from court review pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii)."

6

*Id.* at 206. The nature of the claims—whether they were of constitutional dimension, for example—did not matter. *Jilin* upheld the District Court's decision "that it lacked jurisdiction to review this administrative decision." *Id.*[4]

I am constrained to hold likewise. *Jilin* instructs that because Section 1155 vests unreviewable discretion in the agency to revoke approval of a petition, Congress has denied the district court jurisdiction to hear a challenge to the agency's action. Count I must therefore be dismissed

**B.   Count II**

Count II, alleging a due process violation, is different. It alleges that the plaintiffs were not given a "meaningful opportunity to challenge the basis" of the revocation of approval of VSG's I-140 petition and the resulting denial of the I-485 petition. What Mr. Ramalangam primarily complains of here, I think, is that USCIS acted without his knowledge. He had left VSG behind long ago when its principals were criminally convicted, the USCIS understandably became suspicious of VSG's previously filed petitions, and it served notice on VSG (but not on Ramalingam) of its intent to revoke those approvals.

Defendants maintain that this is between them and VSG; they served their NOIR on VSG, and were not required to notify Ramalingam that his status was in jeopardy.

Many facts remain to be explored, but I think this states a reviewable claim. It is not, as such, a challenge to the agency's discretionary decision, but to its procedures. The reasoning of Section III.A, *supra*, is therefore distinguishable.

As luck would have it, the Second Circuit has spoken on this very issue—and by this "very issue," I mean the revocation of VSG's I-140 petitions. In *Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015), another ex-employee of VSG named Mantena brought such a due process challenge, which was

---

[4]   *Jilin* explicitly noted that, even though rejection of a petition as an initial matter might have been reviewable, the revocation of approval of the same petition would not. That, said *Jilin*, is the system Congress devised, and the courts are powerless to change it. 447 F.3d at 205 n.11.

7

dismissed for lack of jurisdiction. The U.S. Court of Appeals for the Second Circuit reversed, in an opinion written by Judge Calabresi.

*Mantena* held that a due process challenge to agency procedures fell outside of the jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(B)(i). *Id.* at 728–30. Its approach in so holding is consonant with that of this Circuit in *Alaka v. Attorney Gen. of U.S.*, 456 F.3d 88 (3d Cir. 2006) (as amended Aug. 23, 2006). *Alaka,* distinguishing *Jilin, see id.* at 98, focused closely on the precise scope of the matters that the statute committed to the agency's unreviewable discretion.[5] In *Mantena,* the Second Circuit held that the agency's adherence to procedures was not a matter committed to its sole discretion.

*Mantena* also rejected the defendants' standing challenge, in terms not dissimilar to those expressed by the Third Circuit in *Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 161–64 (3d Cir. 2015). *Mantena*'s standing rationale was intertwined with the related holding that a due process claim, belonging to the employee, was viable.

Judge Calabresi reasoned that, particularly in portability cases, the original employer may have no interest whatever in the viability, or not, of the I-140 approval with respect to its now-ex-employee. "The revocation of VSG's I-140 petition mattered little if anything to VSG, which no longer employed Mantena (and might not even remain in existence)." *Id.* at 734. In such a situation, the only current, live interest in the matter may reside with the ex-employee and her current, successor employer:

> Relying solely on notice to VSG effectively precluded Mantena from being notified until it was too late to act, until her adjustment of status application was consequentially denied. More broadly, limiting the notice to the original petitioner precludes the new employer, the one who has, under the portability provisions, been allowed to adopt the original I-140 petition, *735 from asserting its interest in the matter. And this runs directly against the aim of the statutory amendments. By placing beneficiaries and successor employers in a position of either blind faith in the original

---

[5]   *Alaka* held that the statute, while unquestionably empowering he Secretary or the Attorney General to "decide" whether to withhold deportation of certain persons convicted of crimes, did not "specify" that the decision was solely a discretionary one.

8

petitioner's goodwill and due diligence or a forced and continued relationship with the now-disinterested and perhaps antagonistic original petitioner, such a scheme would completely undermine the aims of job flexibility that those amendments sought to create.

*Id.* at 734–35.

I am persuaded. The regulatory requirement of notice only to the ex-employer, as the "affected" party, is an artifact of the pre-porting regime. To apply it without consideration of the real interests at stake could give rise to a due process violation. The result, with proper notice, might or might not have been the same. But at the very least, Ramalingam's due process claim should survive a motion to dismiss and permit an exploration of the factual context in discovery.

As to Count II, the motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the complaint for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is GRANTED as to Count I. Defendants' motion to dismiss the complaint for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), is otherwise DENIED.

An appropriate Order follows.

Dated: March 30, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.